UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Oscar Huerta-Macias,** **Civil No. 01-1812 (RHK/SRN)**

**Plaintiff,**

**v.**

**United States of America and John Doe Jane Doe,**

**Defendants.**

**REPORT AND RECOMMENDATION**

---

Plaintiff is pro se.

Friedrich A. P. Siekert, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion for Summary Judgment (Doc. No. 15). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants' Motion for Summary Judgment be granted.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

### A. Facts.

On March 11, 1993, after he was convicted of various narcotics violations, the United States District Court for the Southern District of California sentenced Plaintiff to 360 months in custody, followed by five years supervised release, a $50.00 assessment, and a $2,000.00 fine.

FILED JAN 16 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(Complaint at ¶ 1.) On July 16, 1997, the district court vacated Plaintiff's $2,000.00 fine, stating that "all fines and special assessments previously imposed on Oscar Huerta-Macias, . . .be, and hereby are, remitted." Id. at ¶ 2. At the time of this order, Plaintiff was confined at the Federal Correctional Institute in Greenville, Illinois (FCI Greenville). Id. A copy of the order together with a Corrected Judgment & Sentence Order was received by the records officer at FCI Greenville, and a copy was placed in Plaintiff's file. Id. at ¶ 3. Plaintiff, however, was never notified that his fine had been vacated. Id. On or about February 11, 1998, prison officials at FCI Greenville continued deducting from Plaintiff's UNICOR monthly pay to complete the final payment on his $2,000.00 fine. Id. at ¶ 7.

On November 9, 1999, after filing a motion to vacate and set aside his sentence, Plaintiff learned that his fine had been vacated. Id. at ¶ 8. On March 7, 2000, Plaintiff arrived at the Federal Correctional Institute in Sandstone, Minnesota (FCI Sandstone), and remains confined there. Id. at ¶ 8. In January 2001, through the aid of an inmate law clerk, Plaintiff first was given a copy of the Order Granting Motion for Remission of Fine and Special Assessment. Id. at ¶ 9. Plaintiff contacted his Unit Counselor, Gerald Smith, in an effort to have his fine returned to him. Id. at ¶ 10. In January 2001, Smith informed Plaintiff that he had discussed the matter with the United States Attorney's Office, and Plaintiff would have his fine returned to him no later than January 31, 2001. On February 12, 2002, Plaintiff filed an administrative claim with the United States Bureau of Prisons, for damages under the Federal Tort Claims Act (FTCA). Id. at ¶ 11. In August 2001, Tracy Kilsdonk, Plaintiff's Unit Manager, informed him that someone from the Regional Office had been in contact with her, and Plaintiff would receive his refund within two weeks. Id. at ¶ 12. Kilsdonk told Plaintiff, however, that he should first dismiss his

FTCA action. Id. Plaintiff declined to dismiss his FTCA action, and on September 5, 2001, the United States Bureaus of Prisons denied Plaintiff's FTCA claim. Id. at ¶¶ 12 & 13.

On October 2, 2001, Plaintiff filed the present Complaint. Plaintiff brings claims under the FTCA against various employees at FCI Greenville, acting in concert with employees of the Office of the United States Attorney - Financial Litigation Unit, for knowingly, willfully, wantonly, and with reckless disregard for Plaintiff's right of ownership, taking and converting $2,050.00 without lawful authority, and deliberately disregarding the court order for remittance of that money for over four years. Id. at ¶ 15. Plaintiff also brings a Bivens action, charging John Doe and Jane Doe while acting in their official capacities as Records Officers, IFRP Coordinator, Unit Manager, Case Manager, and Correctional Counselor at FCI Greenville, with similar acts to those included in the FTCA, and further, deliberately withholding from Plaintiff that his fine had been vacated and remitted, and continuing to unlawfully collect Plaintiff's monthly UNICOR paycheck monies for this fine, knowing it had been vacated and remitted. Id. at ¶ 18.

Plaintiff seeks: (1) actual damages in the sum of $2,050.00; (2) reasonable interest on the $2,050.00 over four years; (3) $2,500.00 in punitive damages; and (4) reasonable costs and expenses accrued in connection with this action.

As part of Defendant's motion for summary judgment, Joann Blas, a Legal Assistant in the United States Attorney's Office's Financial Litigation Unit (FLU) provided a declaration (Blas Decl.). It states that on February 9, 1998, Plaintiff had paid $2,025.00 to FLU. (Blas Decl. at ¶ 4.) Blas' affidavit states that from April 3, 1998 through January 11, 2002, the Debt Accounting Operations Group (DAOG) electronically transmitted refund payments to the Bureau

of Prisons (BOP) for placement in Plaintiff's commissary account. Id. at ¶ 5. As of the January 11, 2002 payment, the full $2,025.00 had been refunded to Plaintiff. Id.

**A. Discussion.**

**1. Summary Judgment Standard.**

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial." Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002) citing Celotex, 477 U.S. at 323. "In opposing a motion for summary judgment, the nonmovant must make a showing that, if reduced to admissible evidence, would be sufficient to carry the nonmovant's burden of proof at trial." Celotex, 477 U.S. at 323

**2. Sovereign Immunity.**

The doctrine of sovereign immunity holds that the United States and its agencies and instrumentalities (including the BOP) are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057,

1063 (8th Cir. 1991). See also In re: Russell, 155 F.3d 1012 (8th Cir. 1998) (per curiam).

**a. The Federal Tort Claims Act.**

The United States waives immunity from tort claims within the following restrictions: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

Courts have carefully considered what potential damages qualify as interest prior to judgment, the recovery of which is not permitted by the FTCA. In Preston v. United States, 776 F.2d 754, 760 (7th Cir.1985), the Seventh Circuit reasoned as follows:

> The plaintiffs' final argument is that they are entitled to recover as additional compensatory damages the value of the loss of use of the converted grain during the twelve years that the CCC has had the use of that grain. While acknowledging that the Federal Tort Claims Act, 28 U.S.C. § 2674 (1982), bars an award of prejudgment interest, the plaintiffs seek to distinguish an award of interest from compensation for the loss of use of the converted items. The district court rejected this argument because it found that the plaintiffs were really seeking an award of interest.
>
> We affirm the district court's decision denying compensation to the plaintiffs for the loss of the use of their grain for twelve years. In reality, the plaintiffs are seeking an award of prejudgment interest since they would have sold the grain if the CCC had not converted it and since they would have been able to obtain interest on the proceeds from this sale. Compensation for the use of money damages prior to judgment would clearly be an award of prejudgment interest, which is barred by the Federal Tort Claims Act. *See Southern Pacific Transportation Co. v. United States*, 471 F.Supp. 1186, 1197 (E.D.Cal.1979). Although the courts have allowed recovery for loss of use damages for items that can be used for the production of income in the future, the courts have not allowed recovery of an award that represents either an advantage to the United States from its possession of money damages from the time of the injury to the date of the judgment or a disadvantage or loss to the plaintiff occasioned by the fact that payment of the

> damage award occurred some months or years after the injury was suffered. Id. at 1195-97. In sum, we hold that the plaintiffs in the present case are really seeking to recover for the loss of the use of money from the sale of the grain or prejudgment interest, which is barred by the Federal Tort Claims Act.

In Marchese v. U.S., 781 F. Supp. 241 (S.D.N.Y.1991) a court applied Preston's reasoning to claims under the Federal Deposit Insurance Act, which has also been held to contain no waiver of sovereign immunity for claims for interest. When considering facts that presented the same issue as in the present case, the court stated,

> The rule that the United States and the FDIC cannot be sued for an award of interest bars plaintiffs' claims for interest they would have earned on their certificates of deposit. The plaintiffs seek the interest they could have earned on the principal amounts on their certificates of deposit if the FDIC had not withheld them from 1985 until 1990. Since the plaintiffs have already recovered the principal amounts of their certificates of deposit, or at least the amounts covered by Federal deposit insurance, this suit is only for the interest plaintiffs could have earned if the government was not in possession of their certificates of deposit.
>
> As plaintiffs are only seeking to recover the interest they could have earned on their certificates of deposit, the United States and the FDIC are immune because neither has waived sovereign immunity or claims of prejudgment interest. *See Barrett*, 660 F.Supp. at 1319-20. While plaintiffs here did not recover their principal through a judgment, their recovery of the full amounts of their certificates of deposit through agency action is the functional equivalent of a judgment for the value of their certificates of deposit, and so their claim is for prejudgment interest. Notwithstanding plaintiffs' attempt to characterize their claim as one for damages for the FDIC's wrongful withholding of their certificates of deposit, their claim still is one for prejudgment interest. Since sovereign immunity bars claims for prejudgment interest against the United States and the FDIC, defendants' motions to dismiss must be granted.

Id. at 247-48.

The Supreme Court interpreted the term "punitive damages" in the FTCA to refer to the

common law understanding of punitive damages. See Molzof v. United States, 502 U.S. 301 (1992). Accordingly, the Court concluded that the statute bars recovery for claims which depend on proof that a defendant has engaged in intentional or egregious conduct, and have the purpose of punishing. Id. at 312.

**b. Bivens Liability.**

In Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court established that under certain circumstances individuals could bring suits against federal officials for violations of federal constitutional law. It is well-settled, however that Bivens suits cannot be brought directly against the United States and its agencies, because Congress has not waived the federal government's immunity from constitutional claims brought under Bivens. As the Eighth Circuit explained, "Bivens and its progeny do not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials." Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983). See also Schutterle v. United States, 74 F.3d 846, 848 (8th Cir.) (the United States and its agencies "are not proper Bivens defendants because of sovereign immunity"), cert. denied, 517 U.S. 1210 (1996).

The Supreme Court has also stated that official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 167 (1985) (quoting Monell v. New York City Dept. of Soc. Services, 436 U.S. 658, 690, n. 55 (1978)).

C. **<u>Defendants' Arguments.</u>**

**1. FTCA Claims.**

The United States argues it is entitled to summary judgment on Plaintiff's FTCA claims. Citing 28 U.S.C. § 1346(b)(1), the United States explains that Plaintiff can only succeed on an FTCA claim if he can show that a private person in the same circumstances would be liable to him for the same acts committed by the United States. The United States explains that Illinois law governs Plaintiff's claim because it concerns events taking place in Greenville, Illinois. As a result, Plaintiff must establish: (1) a duty; (2) breach of that duty; (3) a causal connection between the breach and an injury; and (4) injury in fact.

The United States argues that the BOP employees owed Plaintiff no duty to inform him that his fine had been vacated. It explains that the BOP regulations Plaintiff cites in his Complaint do not establish a duty under Illinois law. The United States also argues there can be no causation because Plaintiff voluntarily chose to make payments through the Inmate Financial Responsibility Program (IFRP), while having the opportunity not to participate. Hence, "[a]ny damages sustained by him were as a result of his own actions and not as a result of any payment program set up by the BOP as a convenient means for him to meet his obligations." Finally, the United States argues that Plaintiff can not demonstrate any damages. It notes that the $2,025.00 was returned to his commissary account. With respect to interest, the United States explains that Plaintiff's prison account does not earn interest. Further, prejudgment interest is not recoverable under the FTCA. Finally, the United States argues that Plaintiff failed to mitigate his damages by contacting the sentencing court and determining the status of his filings. It emphasizes that at the time the fine was vacated, Plaintiff was represented by counsel who signed the stipulation for

remission of the fine and special assessment.

### 2. Bivens Liability.

The Untied States asserts that it has no Bivens liability. It explains that it has not waived sovereign immunity from claims that its employees violated the Constitution. Therefore, "to the extent that Huerta-Macias's claims for violation of his due process rights are deemed to be made against the United States, they should be dismissed."

Defendants also argue that the claims against the Doe Defendants should be dismissed. Defendants explain that the Doe Defendants are not identified adequately. Further, "[t]here is nothing in the complaint to indicate what efforts, if any, Huerta-Macias undertook to identify the 'Doe' defendants. The complaint also gives no factual basis upon which an identification of those individuals could be made." Defendants explain that it is likely several different people filled each of the positions Plaintiff outlines in the Complaint. They conclude that "[i]n the absence of any allegations of wrongdoing and facts sufficient to identify with reasonable certainty the person who may have done the alleged acts, Huerta-Macias's claims against the "Doe" defendants should be dismissed without prejudice."

Defendants also argue that Plaintiff failed to sue the Doe Defendants in their individual capacity. Instead, Paragraph 18 of the Complaint alleges acts committed by the Doe Defendants "while acting in their official capacities." Defendants explain that a Bivens action against federal employees in their official capacities is to be construed as one brought against the United States itself.

Defendants also contend that the Complaint should be dismissed for lack of service of process, pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5). They base this argument on

Plaintiff's failure to serve any individual with a copy of the Summons and Complaint. Further, according to Defendants, the Court lacks personal jurisdiction over the Doe Defendants regardless of the service of process issue. They explain that the acts in question were performed in Illinois, hence, there is no basis for specific personal jurisdiction. Defendants assert that there is also no basis for general personal jurisdiction, "because the complaint does not contain any allegation that the "Doe" defendants, individually or collectively, lived in or had any systematic contact with the state of Minnesota."

Finally, Defendants argue that the Bivens claims should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to bringing the present lawsuit. They quote the Prison Litigation Reform Act (PLRA), which states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

**D. The Court's Recommendation.**

The Court recommends granting Defendants' motion. The United States has successfully demonstrated, through the Blas Declaration and its supporting attachments, that the $2,025.00 Plaintiff paid to satisfy his vacated fine was completely returned to him as of January 11, 2002. Therefore, Plaintiff's remaining claims are: (1) reasonable interest on the $2,050.00[1] over four years; (2) $2,500.00 in punitive damages; and (3) reasonable costs and expenses accrued in connection with this action. These forms of relief are not available under the FTCA. In addition,

---

[1]The Complaint claims Plaintiff paid $2,050.00 in fines, while Defendants argue it was $2,025.00. Because the Blas Declaration demonstrates that the entire amount Plaintiff did pay was returned to him, this distinction appears to be unimportant.

Plaintiff can not maintain a Bivens against the Doe Defendants in their official capacities. Therefore, Plaintiff can not succeed on any of his claims as a matter of law and the entire Complaint should be dismissed.

**1. The FTCA Claims.**

The FTCA states that the United States "shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. Based on the wording of this statute, courts consistently deny punitive damages claims against the United States, such as the one in the present case. In addition, in cases such as Preston and Marchese, courts explained that the kind of interest Plaintiff seeks in the present case qualifies as interest prior to judgment. Consequently, both the FTCA claims are barred by the doctrine of sovereign immunity. Because these claims fail as a matter of law, it is neither necessary nor appropriate to consider Defendants' arguments that Plaintiff can not meet the standard for negligence under Illinois law.

**2. The Bivens Claims.**

In Laswell, 683 F.2d at 268, the Eighth Circuit explained that, "Bivens and its progeny do not waive sovereign immunity for actions against the United States; it implies a cause of action only against federal officials." Therefore, under Bivens, Plaintiff can not maintain his claims against the United States. Further, in Kentucky v. Graham, 473 U.S. at 167, the Supreme Court made clear that suing individual government employees in their official capacity is equivalent to pleading an action directly against the entity which is their employer. Hence, by naming the Doe Defendants in their official capacities, Plaintiff has essentially attempted to sue the United States. Therefore, his claims also can not be maintained as a Bivens action. In addition, because these claims are effectively brought against the United States, it is not

necessary to consider Defendants' arguments concerning service of process and personal jurisdiction over the Doe Defendants.

Finally, because Plaintiff's other claims fail as a matter of law, the Court recommends denying Plaintiff's claims for costs and expenses accrued in connection with this action.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

(1) Defendants' Motion for Summary Judgment (Doc. No. 15) be **GRANTED**.

Dated: January 15, 2003.

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 30, 2003, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.